# CASES

IN THE

# SUPREME JUDICIAL COURT

IN THE

## COUNTY OF YORK, APRIL TERM, 1830,

---

## PEASE *vs.* NORTON & ALS.

The bond given by a debtor in execution pursuant to *Stat.* 1824, *ch.* 281, may be given either to the creditor or to the officer.

And if such bond be not taken in exactly the full amount of the debt, costs and fees, yet it is still a good bond at common law, if accepted by the creditor.

The bringing of a suit on such bond by the creditor is an acceptance of it.

Where the time for taking the poor debtor's oath under *Stat.* 1824, *ch.* 281 was fixed in the bond to be *Dec.* 17, but the notification to the creditor was altered to *Dec.* 19, by the officer, without the debtor's knowledge ; and the debtor attended at the time and place fixed in the bond, but the justices to whom he applied to administer the oath declined attending on that day, for want of notice to the creditor ; and on the 19th the debtor and the justices met at the place named in the bond, but the debtor refused to take the oath ; and within ten days from the day named in the bond the debtor surrendered himself to the officer making the arrest, who now refused to receive him ;—it was *held* that the debtor having done all in his power, and committed no fraud, the condition was saved.

The ten days mentioned in *Stat.* 1824, *ch.* 281, *sec.* 1, do not commence till the justices, to whom a poor debtor applies to be admitted to the oath of insolvency, have disallowed the oath ; provided the debtor has done all in his power to take it. And in the computation of the ten days, the day appointed for taking the oath is excluded.

DEBT on a bond dated *Nov.* 13. 1827. in the penal sum of

$247 88 ; conditioned " that whereas the above bounden *James Norton* hath been and now is arrested by *Nathaniel Tilton*, deputy sheriff for the county of *Cumberland*, by virtue of an execution issued against him the said *James Norton* on a judgment recovered against him by the said *Simeon Pease* at the Court ·of Common Pleas holden at *Alfred*, within and for the county of *York*, on the third Tuesday of *October*, 1827, for the sum of one hundred and nine dollars, debt or damage, and costs of suit taxed at eight dollars and seventy four cents, with twenty five cents more for one writ of execution, and the officer's fees and charges for arresting the said *James Norton* on said execution, taxed at six dollars and five cents ; and whereas the said *James Norton* hath signified to the said *Nathaniel Tilton*, the officer making said arrest, his intention to avail himself of the privilege of taking the oath or affirmation provided in the act for the relief of poor debtors, passed *Feb.* 9th, *A. D.* 1822, and hath made complaint to *John Anderson* Esquire, one of the justices of the peace for the county of *Cumberland*, of his inability to pay the debt aforesaid or to support himself in prison ; and whereas the said *John Anderson*, justice as aforesaid, hath in due form of law made out a notification to the said *Simeon Pease*, the creditor, signifying the said *James Norton's* desire to take the privilege and benefit of the aforesaid act, and that monday the seventeenth day of *December* next, at eleven o'clock in the forenoon, is intended for the caption of the oath or affirmation allowed by said act, at the office of *John Anderson* Esquire, in said *Portland*.   Now if the said *James Norton* will appear at the time and place appointed for taking the oath or affirmation aforesaid, and further, if, in case the justices of the *quorum* to whom such notification may be returned shall not allow said *James Norton* to discharge himself by taking said oath or affirmation, the said *James Norton* shall surrender himself to the said officer or to the keeper of the jail of said county, within ten days after such justices shall disallow the oath or affirmation aforesaid to the said *James Norton*, to be dealt with in the same manner as if the proceedings aforesaid had never been had, then," &c.

In a case stated by the parties it was agreed that the notification to the creditor, which was made out pursuant to the bond, had been

altered by the officer to whom it was sent for service, from the 17th to the 19th day of *December*, without the knowledge of the debtor, and had been accordingly served and returned ; and that the debtor appeared at the time and place mentioned in the bond, and requested the attendance of two justices of the *quorum* ; but finding that the notification had been altered, nothing further was done. On the 19th of *December* the debtor and the justices both attended at the same place, but the debtor refused to take the oath. And on the 27th day of *December*, the debtor personally surrendered himself to the officer making the arrest, who, though well knowing what had been done, refused to retake or receive him. Upon these facts the case was submitted to the decision of the court.

*J. Shepley*, for the plaintiff, contended that the condition of the bond was broken. The debtor was bound to attend at the time and place appointed for taking the oath ; and to constitute a legal appointment, all those things must occur which are essential to authorize the magistrates to proceed ; of which notice to the creditor was an indispensable requisite. And this notice the debtor should have given at his peril. Having failed to do this according to the bond, the condition is gone, and cannot be saved by any subsequent act of the obligors.

But if it could ; it has not been saved by any thing subsequently done ; for it was the duty of the debtor, if he would rely on the notice actually given, to have taken the oath on the 19th, unless disallowed by the magistrates. But this he refused to do. His surrender came too late, on either principle ; for he might have surrendered himself on the 17th, which therefore is to be accounted as one of the ten days ; and thus the 27th, when the surrender was made, is excluded from the computation. *Presby v. Williams*, 15 *Mass.* 193 ; *Wheeler v. Bent*, 4 *Pick.* 167.

To the point that the bond, though not taken for the exact sum mentioned in the statute, was still a good bond at common law, he cited *Buker v. Haley & al.* 5 *Greenl.* 240.

*N. Emery*, for the defendants, insisted that the bond was void, first because it was taken to the creditor, instead of the sheriff, for whose security alone it was intended ; and secondly because it was taken

Pease v. Norton & als.

for an excessive amount ; the statute requiring that it should be taken for the exact amount of debt and costs, and this being for more than double that amount.

But if it were a good bond, he argued that the debtor had in substance performed the condition, having done all that was in his power. 2 *Saund.* 61 ; 6 *D. & E.* 153 ; 1 *Com. Dig. Bail* ; 10 *East,* 100 ; 3 *Mod.* 87 ; 1 *Burr.* 244 ; 1 *Caines* 9 ; *Shep. Touchst.* 137 ; *Knight v. Winter, Barnes,* 68 ; *French v. Knowles, ib.* 111 ; *Ryan v. Watson,* 2 *Greenl.* 382 ; *Champion v. Noyes,* 2 *Mass.* 481.

MELLEN C. J. delivered the opinion of the Court at the ensuing July term in *Waldo.*

In the case of *Buker v. Haley & al.* decided in this county, *April* term 1828, the bond declared on was given by the defendants to *Buker,* the officer who had made the arrest, and that circumstance was urged as an objection against the validity of the bond. The statute of 1824, *ch.* 281, being silent as to the person to whom the bond should be given, the court considered the objection as unsubstantial ; and that there was nothing in the act forbidding such a bond. In the case before us the bond was given to *Pease* the creditor, instead of *Tilton* the officer ; and the objection now is that it should have been given to the latter. Our opinion is that such a bond might have been lawfully made either to the officer or to the creditor. In both cases the beneficial interest belongs to the creditor. The statute has since been repealed by the statute of 1828, *ch.* 410. The bond having been given to the creditor, cannot be impeached, as having been given for ease and favor. None are liable to that objection but such as are given to an officer. *Winthrop v. Dockendorff,* 3 *Greenl.* 156, and the authorities there cited.

It is urged that the bond is void because it was given for more than the amount prescribed by the statute. The penal sum is $247 88, and the amount of the plaintiff's execution, debt and costs, together with the officers fees and charges as estimated and stated in the condition, amount only to $124 04 ; whereas the statute declares that the bond shall be " in the full amount of the debt and costs, and all legal costs arising thereon." It would seem as though the

bond was intended to be double the amount of debt, costs and fees : but it is not double to such amount. In fact, it was not such a bond as the law required, and might not have justified the officer in discharging *Norton* from his arrest and custody ; but still, the plaintiff has sanctioned his conduct, so far as he could, by accepting the bond, and commencing this action to obtain the benefit of it : and though it is not good as a statute bond, there is no reason why it may not be good at common law. It was voluntarily entered into, for the benefit of the defendant, *Norton*, to procure for him a lawful release from a lawful arrest ; at least a temporary release. According to our decision in the before mentioned case of *Winthrop v. Dockendorff & al.* supported by the authorities there collected, we have no hesitation in pronouncing the bond in question as good at common law.

The next inquiry is whether the defendant, *Norton*, complied with the terms of the condition. It appears that the 17th of *December*, 1827, was the day appointed for him to take the poor debtor's oath, at the office of Mr. *Anderson ;* at which time and place, he requested the justices to attend. But because the notice had not been duly given to the plaintiff, returnable on that day, but had been altered, without *Norton's* knowledge, so as to be returnable on the 19th, they declined proceeding on the 17th. *Norton* did not offer to take the oath on the 19th ; and no further proceedings were had ; and, of course, no certificate was ever made by the justices. In these circumstances, all of which were known to *Tilton, Norton,* on the 27th day of *December,* being the last of the ten days mentioned in the condition of the bond, offered to surrender himself to the officer, and requested him to retake him on the execution, to be dealt with in the same manner as though no proceedings had been had. At this time *Tilton* knew that *Norton* had not taken, nor attempted to take the oath by law prescribed : of course he well knew that the justices could not have made any certificate of their proceedings, because there had been no proceedings on their part. *Norton* might have been satisfied that he would not have been admitted to his oath, and concluded to proceed no further, but return to the custody of the officer. Why did he not receive him and commit him ? We see no good reason for his refusal. The surrender was offered within

the limited time, and in the peculiar circumstances of the case, there being no appearance of fraud or management on *Norton's* part, we think it was a substantial compliance with the condition of the bond.

But there is also another ground which seems to us to sustain the defence. Suppose that there was no disallowance by the justices, and that *Norton* had never made any offer to surrender himself to the officer; do the facts before us shew any breach of the condition of the bond? According to that condition, *Norton* was to appear at the time and place designated therein for taking the oath by law prescribed. This part of the condition he performed. And if the justices should not allow him to take the oath, he was to surrender himself to the officer, or at the prison, within ten days after such disallowance. Now if the proceedings which were had, did not amount to a disallowance by the justices, then the condition of the bond is not broken; because the term of ten days, during which a surrender might legally be made, has not as yet commenced. In either view of the case our opinion is, that the present action on the bond cannot be maintained.